The first case called for argument is County of Shelby v. Galvin and counsel whenever you're ready you may proceed. Thank you. Please support. Thank you.  And the reason for that issue has to do with the motion to dismiss this appeal for lack of a fellow jurisdiction. Our position is that this appeal is brought under Supreme Court rule. The motion to dismiss the appeal for lack of a fellow jurisdiction. The motion to dismiss the appeal for lack of a fellow jurisdiction. You'll hear argument from the opposing side that this is not a 14 on one petition. It's just merely a stipulation or an agreement that judge. We want you to vacate your order and put our agreement in as your order. Less than all of the parties because obviously the road district does not agree with stipulation and neither do the intervening appellants.  For being in violation of defense laws. In this case, Mr Carlin. They are asking the court. They asked the trial court. To June 11, 2008 order that was in. That's what they want. Thank you in the sense of their feeding asked for that. And then they want a new order put in its place. Obviously, this court has jurisdiction because that's exactly what the trial court did. And every party in this case agrees that the trial court vacated her 2008 judgment. This judgment was vacated more than two years after it became final. This very court upheld the original 2008 judgment. September 22, 2012. That's when it became fine. Two years after that. Excuse me. In 2010 was when the court entered that affirmed the trial court 2008 judgment in 2010 or 12. It then became fine. We're now a year and a half past that before they filed their petition to have that order vacated. That is not allowable under 1401. They are merely trying to say that their petition and we fully agree. It's a poorly drafted petition. They state that they didn't allege the necessary elements within the petition. I fully concede that. But it's not the road districts or the Mr. Curler. Goodwin's job to point out their defects. We don't have to. We had a choice to make. Do we want to point out their defects and make them do it correctly? Or do we want to say, Judge, I don't care what they really plead. They can't plead what they need to. And that's why Section 619 motion to dismiss was filed. Then the court heard that. Her argument only on the 619. So the first issue assuming this court rules that they do have jurisdiction is whether or not the court air in denying the motion to dismiss under 2619 of the code. We're in. We allege that the petition was filed outside of the time limit prescribed by law. That time limit under 1401 is two years after the order becomes final, i.e. September 22, 2012. The petition was not filed until April of 2014. Obviously, it was filed outside of the two year time limit. They concede that point in their briefs. So if the court rules we have jurisdiction and it being that the ultimate relief sought by the Apple ease in this case was vacation of the 2008 order, which it was, and everyone acknowledges that the court error by not dismissing the petition. The court did not have jurisdiction to do what it did. The second issue that the court should then needs to also consider is whether or not the trial court air in actually granting the 1401 petition. If they ruled it shouldn't be. The 2619 shouldn't have been granted. In order for a section 1401 or vacation of an order after two years. They must plead and prove a meritorious defense due diligence in defending the original action and due diligence and filing the 1401 petition. Even if they pled that the court heard absolutely no evidence as it relates to the relief sought by the Apple ease, i.e. the vacation of the order. No evidence whatsoever. They must not only plead the elements, but they have to prove that they're entitled to that relief. The court has said this. I believe it was the Supreme Court has said in Bell versus oil, which is cited in our brief that the 1401 action, the relief sought by the Apple ease is a new action and must be pled and proven. For the court to even act on that petition. And they must allege that right that they have a right to have a vacated. And without any evidence, they cannot be granted the relief song. No evidence was presented at the trial court. The trial court could not vacate its 2008 judgment on the argument alone that was had on the motion to dismiss. But it was done anyway. Further. That led into my third issue in the appellate brief about no evidence being presented to the trial court. And further, the court was also asked. Did the court err in allowing the vacation of the 2008 judgment in that ordering that the subdivision, let the state subdivision could be replanted. Submit me new plants and I'll decide what's going to be done. Absolutely not. Section six of the Platt Act. In order to vacate a subdivision, the person that owns that subdivision must get the written agreement of the highway commissioner in this case. And that's all they need. If they're vacating the entire plant, the entire subdivision. But that's not what we have here. What we have is two lots per soul. One lot to Mr. Pearl and another lot to the good ones. This was before the Galvin's bought the remainder of the subdivision, much like in the Rubel case, which is cited extensively in the briefs. The court or the Platt Act then goes on to state if lots are sold prior to the vacation of that subdivision. They must obtain the written consent of the owners who have bought those previous lots. In this case, William Pearl and the good ones. They haven't done so. Mr. Crow, the good ones aren't going to consent to that. That's why they started their mandamus action against the county and the Galvin's to actually enforce this 2008 order. Furthermore, the Appalese take contention that Section 6 doesn't apply. It does apply because they say Section 7 applies. Well, if you read Section 7 of the Platt Act, it refers to the procedure set forth in Section 6, which I just described. They have to obtain the written consent of Mr. Pearl and the good ones. They don't have it and they won't get it. Same way with the highway commissioner. They don't have his consent and they won't get it. There is a road that's been dedicated and accepted to the township. In order to vacate that flat, the highway commissioner, Mr. Robertson, would have to give his written consent. It can't. Mr. Robertson could, but he doesn't want to. It's his road and that's his decision. This case is about finality. This judgment has been in place since 2008, June 11th. This court, after extensive briefing by the road district, affirmed that judgment in 2010. The township has interests to protect here. Here we're going to go into the revestment doctrine, which I think you're going to hear a little bit about here in a few minutes. The appellees suggest that this isn't a 1401 petition. Nothing could be further from the truth. They're asking for the exact relief that that section of the code provides for. And the courts say you don't look to what the title of the petition, although the title of the petition is asking for vacation, but you look to the substance. What are they actually asking for? They're asking that the 2008 judgment be vacated. More than two years, almost six years after it was originally entered by the trial court. This can't be allowed under. They're going to live under the revestment doctrine, as you see in the briefs, that a stipulation between the galvans in the county. Allow the court to revest the court of jurisdiction after the two years vacated judgment and enter their agreement as its order. That's not the law. Bradley says, and that's a Supreme Court case from 2014. Both parties must actively participate in the proceedings. Fail to object to the untimeliness of the late filing and assert positions that make the proceedings inconsistent with the merits of the prior judgment that support setting aside that judgment. Not all of the parties agree. We're here. The road district's here. The intervening plaintiffs and appellants are here. Mr. Curl and the Goodwins. The Curls have their own property interest to protect. They bought lots. I think it was lots 24 and 25 of Lithia State in reliance upon the plat that was reported and accepted by the county back in 1974. In that plat, which is you can all see our appendix in the original three, a 45 to 46. There are 30. I believe it's 36 lots set forth in that subdivision with additional roads rather than the one that is actually has been built already. Now, the court in Rubel and in I think it's Weddell's stated that the purchasers of those lots in this case would be Mr. Curl and the Goodwins acquire an easement to the streets, alleys and public ways in that original subdivision. Why should we let, why should this court allow that order to be vacated, allow the plat to be vacated in something new in its place? There are roads in that plat for Lithia State subdivision that Mr. Curl and the Goodwins have rights to. They have easement of pertinence to those roads that are not yet built. They have easement of pertinence to any alleys in that subdivision, sidewalks, anything used for the public. They have a right to use. The fact that it is not built yet is inconsequential. That's what we're here for today. The order requires compliance with that plat. To do so, to allow the vacation of this judgment and hence allow the vacation of the subdivision plat would work an injustice upon the Curls, Mr. Curl and the Goodwins. Furthermore, the road district has an interest in seeing this subdivision built. They instituted these original proceedings back in 2006. Shelby County, Illinois, joined with them and actively participated in this case. Not only did the county participate, but the township, road district, I would argue, took the lead in the case and secured this judgment. They paid for it. They used their government funds to secure the rights they're entitled to. They have an interest in this plat. They took this order, which was appealed, all the way to your honors and asked that it be affirmed. It was affirmed. And now here we are, four years later, the same case, trying to keep the same order in place. Also, we have roads that I discussed a little bit about the roads that haven't been built that are platted in the 74 subdivision plat. The township has, once those roads are built to SPAC, the township could then be required to take care of it, to accept them. And I venture to say the township would gladly do that. Not only would they have better roads for the subdivision, but if they're built to SPAC, the township could accept them and receive additional NFT money off of them to help maintain them. Building the subdivision is also beneficial to the township road district because right now, in Shelby County, we have a negative multiplier in relation to our assessed values. And so our assessed values are going down, and we're capped by P-TIL limitations. Taxes are not going up. They're remaining stagnant. Costs for the county, costs for the townships, the road districts, they're going up. We have no control over that. By actually building this subdivision, we'll have the effect of increasing the tax rolls within Shelbyville Township and the road district. They will receive increased revenues off of the increased assessments, which will be based off of the tax levy that is filed each year. So we obviously have a financial stake in continuing to see the township grow. That's one of the reasons why this lawsuit was instituted back in 2006. And unless your honors have any questions, I have no further argument. I believe we don't. Thank you, General. Counsel, I understand the two of you are splitting the time. Pardon me? The two of you are splitting your time. We have an agreement. I will take 12 and a half minutes, and he will take seven and a half. Fine. May it please the court, counsel. My name is John Barber with the law firm of Craig & Craig, LLC, from Mattoon. I represent the defendants, David and Barbara Galvin. As counsel indicated, the first issue here is whether this court has jurisdiction to hear this appeal. The amended joint motion was clearly not a 214-01 motion. It didn't allege a meritorious defense or claim. It didn't allege due diligence in presenting the claim and the original action. It didn't allege due diligence in presenting the petition. It was not filed within two years. It was not supported by an affidavit. It does not look like or appear to be a 214-01 petition. That's because it was never intended to be a 214-01 petition. If it isn't a 214-01 petition, this court lacks jurisdiction because it doesn't have jurisdiction under 304b-3 that the appellants claim this court does. Moreover, the order of the trial court is not final. The trial court in 2012-C-861 suggested filing a motion exactly like this to vacate the order of June 11, 2008. This is exactly what the county and the gallants did. They took it one step further, however, and stipulated and agreed that order should be vacated. The interested parties sought through the doctrine of revestment to vacate and amend the June 11, 2008 order that was inconsistent with the county zoning and subdivision ordinance. The trial court here did not treat the amended joint motion as a 214-01 petition, but rather revested the jurisdiction of the trial court and vacated the prior order. That is exactly what the trial court did in the Johnson v. Empire case, which was cited in a brief. It's clear here that the trial court order, that it did not consider it to be a final order. As the court will note, it still needed to make determinations with regard to flats submitted to it. Counsel cited, it's actually the People v. Bailey case, for the elements of revestment. I believe that's the most recent pronouncement of Illinois Supreme Court with regard to this doctrine. The Bailey case did not abandon the doctrine of revestment. Appellants contend that on page one of their reply brief. Instead, it concluded the third requirement was not met in that case. The motion is not a poorly drafted 214-01 petition. It was never intended to be a 214-01 petition. What it was intended to do is follow the instructions of the trial court in the 2012 C-861 case and to seek revestment of jurisdiction in the court and have the order of June 11, 2008 vacated. The township did not secure the June 11, 2008 order. The relief was only requested after the county joined the case of the plaintiff. Appellants even note this in their opening brief on page six. The authority to pursue the relief in count one is something that the county had, not the township. In considering this appeal, we're talking only about count one of the complaint in 2005 CH-43. We're not talking about count four. The appellants talk about the order in count four in several pages of their reply brief. In fact, in page six to eight, this is simply not involved in this case. The reason for the sign requirement, as alluded to by appellants, is contained in paragraph 15 of the amended joint petition. It's required by the zoning ordinance of Shelby County. Both the Predney case and the Bannister case support the proposition that for revestment to apply, there does not have to be consent by every party to the suit. In Predney, the village had no concrete interest, and Bannister, the other defendant, lacked standing to object. Shelby County and the galleons were the interested parties in the June 11, 2008 order. Only the county had the authority to prosecute its own ordinance. The statute that this court referred to in its prior order gives the county this authority. It directly impacted the county and the galleons. Only the county and the galleons were ordered to do something in that particular order. Both the county and the galleons clearly consented to revestment and clearly consented to having that order vacated. The appellants claim on page 10 of the reply brief that the appellees did not present an argument to the trial court with regard to application of 2619 of the co-decile procedure. That argument is simply incorrect. The memorandum in support of the amended joint motion by the galleons reflect that same argument. I don't have the cite to the actual record, but the supporting record filed with our motion is page 172. As to the issue of replatting, this issue was not ruled upon by the trial court. It's premature to make the argument with regard to replatting since the trial court has not entered any order on that subject. The amended joint motion in this case passed with no change in the existing street pattern. The existing road will stay unchanged as will Curl and Goodwin's lots. The only portion of this subdivision started in 1974 that has been developed is a road maintained by the township and the two lots owned by the appellants Curl and Goodwin. In summary, we would submit this appeal should be dismissed. There's a lack of jurisdiction. The order of the trial court is not a final order. And we would submit the trial court in the alternative correctly ruled under the doctrine of revestment that it could vacate that order. Finally, the flat act argument premature at this point. Does anybody have any questions? I don't think so. Thank you, counsel. My name is Brian Kibler and I am the state's attorney of Eppingham County, Illinois. One of the greatest honors that ever happened was I got to be the state's attorney. Often what happens is when you're the state's attorney, you have to do favors for other state's attorneys who have conflicts. Well, what we have here is a case out of Shelby County where the state's attorney there is conflicted out. Shelby County is a small rural county, not a whole lot of money, so only a handful of attorneys. The case has been going on for 11 years, and obviously the state's attorney had a conflict. So it was my fortune, we could argue whether it was good fortune or bad fortune, but it was my fortune to be brought into this case that predates even me being admitted to the bar. So I got into this case, and I'm the last guy in. I don't have as much knowledge of this case as Mr. Barger or Mr. Probst or Mr. Probst's partner, Ms. Evers, Bachman, Warren. You know, so I'm the last guy in this thing, and I kind of feel like the Steve Carell character from Anchorman. There's a scene where all the guys are sitting around, they're all mad about something. They're all just jealous. This Steve Carell character, you know, Rick, the meteorologist, he's kind of slow. You know, I feel like that. I'm the last guy in. I'm confused. He finally yells, what are we yelling about? I feel the same way. I am in this thing where I'm like, what are we arguing about? Are we arguing about the June 2008 order? Are we arguing about Judge Custer's decision to allow Mr. Barger's client in the county to maybe seek a new replat? I am lost at different things in this situation. But essentially what Mr. Barger eloquently argued, and I'm not going to get into all the legal issues, but he was very technical on all this stuff, about why you guys do not have jurisdiction, why we're not here for, we don't know why we're here. Judge Custer has not made a final decision about whether she will allow the county and Mr. Barger's client to replat. Mr. Probe's client appealed a decision that's not final. And Mr. Barger elegantly laid that out. The brief, the joint brief from the county and Mr. Barger's client laid that out. But what I want to do here in my time with you guys is to quite frankly explain why the county sought back in 2014 to essentially replat this subdivision. Mr. Probe argues that this case is about finality. I mean, finality, finality, finality was his theme, finality. My theme, Justices, is common sense. Essentially, we have an order from 2008 that essentially dictates that a county, a small rural county, to develop a subdivision if Mr. Barger's client doesn't do that. Now, clearly, in that 2008 order, the county had no idea what it was doing. I mean, it violates every fiber of common sense. It even violates the county's own law. Essentially, what that 2008 order does, it requires the county to be on the hook for developing a 34-acre, a 34-lot of a subdivision called Lithia Estates. Each of those 34 lots is a quarter of an acre. It was platted in 1974. Two lots were developed. The rest of the subdivision was essentially abandoned. Mr. Barger's client ended up buying the rest of the property around it because he had an adjoining campground. And then we fast forward 35 years later, and the county's now on the hook for developing a subdivision of quarter-acre lots. They're never going to sell. Who's going to buy a quarter-acre lot and a 34-acre plat subdivision out in the middle of nowhere? It also – the county didn't understand what it was doing, and it's clear, because the county is violating its own subdivision ordinance. Essentially, how things were back in 72, 74, completely different than how they are now with what we do with subdivisions. All counties, especially rural counties, have developed subdivision ordinances. You have to divide the land or create – when you're going to plat it up, you have to abide by certain rules. Well, this 08 order that puts the county on the hook for developing this whole Lithia Estates violates the county's own subdivision ordinance. So essentially, what Mr. Probst is requesting is that the county develop a subdivision that violates the county's own subdivision ordinance. So it's clear that this 2008 order that was entered, the county didn't know what it was doing. So essentially, what happens is we get this 2012 mandamus action from Mr. Probst's other clients, the Curls and the Goodwins. They say, hey, county, you've helped this subdivision. Well, we look at it, and we realize it's going to cost a couple hundred thousand dollars to do so. It's going to violate our own ordinance. And by the way, even if we put new roads in there, we put in sewage, no one's going to buy these lots. So essentially, it's impractical for the county to do this. So the Curls and Goodwins bring us into court, and they say, hey, look, develop this. We're like, we can't. So we go to the judge, and essentially, it's in there, and Mr. Barger alluded to it earlier. We're like, what do we do, judge? And the judge goes, well, go back out and replant it. So that's what we attempted to do. And the judge says, look, I'll have final authority on this. You guys replant it, come back to me, and I'll say whether you guys have to do that. But in the meantime, while we're trying to get a new plant, a new thing put together, this appeal comes. So it gets back to the overwhelming thing. What are we arguing over? We don't have a final decision from Judge Custer about whether she'll let us replant this. It just is confusing to me. But besides the overall thing I want to get to is common sense, why it makes no sense for a county to develop a subdivision. I want to bring up an issue, and Mr. Barger kind of alluded to it when it comes to the issue of standing. The Township Road Commission has no skin in this game. If you look at that 2008 order, they don't have to do anything. They've just got to sit back and do nothing. For some reason, this order put the onus on the county to ultimately be responsible if Mr. Barger's client didn't develop the subdivision. Well, we can get into why that's impractical. I already said that. I don't even know how this happened. But they have no skin in this game. The county is responsible in this June 2008 order to develop the subdivision, essentially. And we can't do it based off of how the county's ordinance are written. We can't do it based off of common sense. So we asked to be able to re-flat, re-come up with a subdivision that would make sense for 2014, not 1974. So that is what we tried to do. And the judge was directing us this way. Hey, you know, the township has nothing to lose here. We're talking about a subdivision, 34 flats. The two homes that were built were spec homes. The rest of the subdivision was never built. The township has nothing to say. And then Mr. Probst kind of made an argument about, well, you know, they have no road funds, no road funds. Well, he's talking about a township that's claiming that they really need this subdivision built because they need the money. It's a subdivision from 40 years ago. I was going to make a joke kind of about the triple crown. We've gone 37 years without a triple crown order. Well, we've gone more than 37 years without another flat or another lot in that subdivision from being sold and developed. I mean, that's how old this thing is. So the township has nothing at stake here, but the county has everything. The township is getting nothing by developing 32 additional quarter acre lots. They're going to get nothing because no one is going to buy such a thing. The county has everything. They have to develop this thing. Developing subdivisions isn't cheap, especially a subdivision that's never going to sell. So the theme, again, is common sense. The county couldn't do what it was ordered to do. So we go back to the judge, and she says, look, try to re-flat this thing and make it make sense. Use some common sense with it. So we tried to do that, and then, to be honest, we got drug down here to Mount Vernon on an appeal. And, again, I don't know what, quite frankly, we're arguing over. All we're trying to do is develop a subdivision that makes sense for our time. That's all we're trying to do. But then Mr. Probst has this argument, well, banality. Township needs money. The Curls and the Good Ones, well, they had a right to expect these things. Well, they bought a lot in a subdivision that hadn't been developed for 40 years. They have nothing at stake.  So we're just asking for common sense to prevail. And I know Mr. Barger put this all in legal terms, but I'm just trying to be practical here. You have a confusing case, over 10 years old. Now we've got multiple parties, multiple government entities. Numerous attorneys have been involved. Attorneys have come and gone in this case. Attorneys have even shown up and ultimately passed away during the pendency of this case. But I'm the last guy in this thing, and I'm sitting here like, okay, well, what can we do that makes sense? What can we do that protects the township as much as possible, protects Mr. Probst's other clients, the Curls and the Good Ones, by developing a subdivision? What can we do to make it cheaper for the county? What can we do to maybe make the burden a little less for Mr. Barger's client? I'm the guy in here trying to put this whole thing together. What I get envy about you guys is you guys aren't like the Supreme Court where you get to pick your puzzles you've got to put together. You guys have to take the puzzles that come. And I kind of feel like being the last guy in that door is kind of what my job is. It's trying to put this whole thing together, put 40 years of history together and all the different dynamics. And at the end of the day, the county is responsible for building a 34-lot subdivision in Puerto Rico, lots of what I always come back to. Why would anyone do that? That is just silly for a poor county to be on the hook for developing a subdivision. So we're just asking for common sense for bail. Allow Judge Custer to finish up her job and to let Mr. Barger's client and the county come back and come up with a new subdivision that makes sense for everybody. That's all we're asking. And Mr. Barger has done a great job laying out why this appeal is not proper. And what I want you guys to remember is that common sense also falls on the same side as the law in this case. This appeal is not proper. Common sense dictates that this appeal is not proper. Common sense dictates that the county should be able to redevelop or replant this subdivision. So essentially we're asking you to dismiss Mr. Proff's appeal and let Judge Custer come up with a final order. I think I'm out of time almost, but are there any questions from the justices? I don't believe there are. Very good. Well, I appreciate your time. Thank you. Thank you, Counsel. Counsel? Thank you, Judge. I heard a lot of common sense come out of the last argument. And just to hit that home, common sense dictates if you would have done what you were supposed to do, maybe some lots would have sold. When no one does and builds a subdivision like they're ordered to do, of course no one's going to buy a lot. But lots have sold in that. Mr. Curl bought a lot and the Goodwins bought a lot based upon and reliance upon the plat that was bid in 1974. They have a right to use the property as it's platted as it relates to the public ways, the streets, and alleys. The county and the governors want to take that away. You can't do that under the Plat Act. Judge Custer went beyond her authority by vacating this judgment. The Supreme Court in Sarefson v. Chicago Board of Education, 201, Illinois 2D95-2002, they basically looked at an issue similar to this, where a motion to, I believe it was Quash, service of a complaint was filed after default judgment was entered. The Chicago Board of Education came back, wanted this all thrown out after the two years was over. The Supreme Court said there are sound policy reasons for allowing review of orders granting relief from final judgment. Once a final judgment has been rendered, setting it aside is a matter of considerable significance. Moreover, it is impractical to subject parties to the time and expense of trial before it is known whether the circuit court's decision to set aside an existing final judgment is proper. That's what we're here for today. She set aside an existing final judgment. She vacated it. We need to know, is that, was it proper for her to even do that? This appeal is not, should be here. This is the exact reason 304B3 exists, because you don't want to put the parties through additional contested litigation where the county's submitting plats, the Galvin's are submitting plats, the township will probably submit the same plat and argue for years and be right back here again in two years after Judge Custer replats it, arguing the plat act issue and whether or not she had the authority to replat that act. Public policy mandates that this court make that decision. Was it correct for Judge Custer to vacate that 2008 order? Absolutely not. Mr. Barber makes a clever argument that she could do that because of the Bills of Prendy case, and I believe it was the Bannister case he cited, and they're in his briefs. Those aren't applicable to this case. In Prendy, that is where the court, and I explained this in depth in my reply brief, but that is where the court said, Bill, you cannot come in here after sitting through the entire trial, sitting on the sidelines and cherry pick what you like after the jury verdict. You can't do that. If you wanted to say that, you should have stayed in, and this all happened because they asked to be dismissed as a party plaintiff during that case. That didn't happen here. The road district has been in this case since its inception, has been to this appellate court now for the second time, trying to uphold the finality of this 2008 judgment. The Curls also have an interest in this. They were allowed to intervene in this Chancery case. They have an interest to see that their rights are protected from the property that they bought for consideration, that the plat is mentioned in their deeds. They have easement appurtenant to the roads that are within the plat. Not only those existing, Mr. Barger tries to make a distinction between we're not going to, the existing road isn't going to change. He misses the point completely. They want to change the rest of the roads. Mr. Curl and the Goodwins have an absolute right to use those roads. The Plat Act doesn't allow them to vacate that plat without their consent because of that reason, because their deeds give them those rights from when they bought the property. And now here we have Mr. Gowden coming in after the homes are sold and built and the county coming and saying, no, we don't really care. It's too expensive. We don't want to spend the money. You're out of luck. That's not how it works. The judge had no authority to vacate this 2008 judgment. It upholds the rights of not only Mr. Curl and the Goodwins to the property rights that they are vested in, but also the township's rights to see that the roads are built the way they are platted and that no further extensions. Who knows what they're going to do? Are they going? I don't. We I won't get into that further. Mr. Kibler argues. Sorry, that's fine. Thank you. We appreciate the brief arguments of all counsel. We'll take the matter under advisement. Thank you.